**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CHE'LA MCCLAIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL VISION SERVICES, LLC d/b/a MYEYEDR.,<br><br>Defendant. | : | Case No.: 1:25-cv-07675<br><br>Hon. Jeffrey Cummings |

**DEFENDANT CAPITAL VISION SERVICES, LLC d/b/a MYEYEDR.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


**I. INTRODUCTION ..... 1**

**II. RELEVANT ALLEGED FACTS ..... 4**

**III. LEGAL STANDARD ..... 7**

**IV. ARGUMENT ..... 7**

A. Plaintiff's ECPA Claim Should Be Dismissed Because Defendant Was A Party To The Communications. ..... 7

B. Plaintiff Has Not Plausibly Alleged The Applicability of The ECPA's Crime-Tort Exception. ..... 8

C. Plaintiff Does Not Plead Any Facts Demonstrating That Defendant Disclosed Individually Identifiable Health Information (IIHI) to Google. ..... 12

D. Disclosure To a Third Party Of A Patient Merely Making An Optometry Appointment Is Not PHI ..... 17

E. Plaintiff's ECPA Claims Should Be Dismissed Because Plaintiff Consented to the Alleged Interception and Disclosure to Google By Establishing A Gmail Account. ..... 19

F. Plaintiff Fails to Plausibly Allege That "Contents" of Communications Concerning Her Particular Health Condition Were Intercepted or Disclosed. ..... 19

G. Plaintiff Does Not Plausibly Allege Any Common Law Claims. ..... 21

1. Plaintiff's Negligence Claim Fails. ..... 21

2. Plaintiff's Breach of Confidence Claim Should Be Dismissed. ..... 22

3. Plaintiff's Unjust Enrichment Claim Fails. ..... 22

4. Plaintiff's Breach of Implied Contract Claim Fails. ..... 23

5. To The Extent the Court Finds Any Of Plaintiff's Common Law Claims Viable, They Do Not Plausibly Allege Damage Resulting From the Interception or Disclosure. ..... 24

**CONCLUSION ..... 25**

**CERTIFICATE OF SERVICE ..... 27**

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ....19

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....7

*Allen v. Midwest Express Care, Inc.*,
2025 WL 2240253 (N.D. Ill. 2025) ....11

*Am. Hosp. Assn. v. Xavier Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....6, 7, 13

*Andrews v. Prisma Health*,
No. 6:23-CV-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) ....24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7, 24

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ....24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7, 13, 16

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019)....22

*BMO Harris Bank, N.A. v. Porter*,
106 N.E. 3d 411 (Ill. App. Ct. 2018) ....23

*Caro v. Weintraub*,
618 F. 3d 94 (2d Cir. 2010)....9

*Columbia Pictures Indus. v. Bunnell*,
No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ....15

*Condon v. Reno*,
972 F. Supp. 977 (D.S.C. 1997), *aff'd*, 155 F.3d 453 (4th Cir. 1998), *rev'd on other grounds*, 528 U.S. 141, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000) ....18

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....16

*Desnick v. American Broadcasting Companies*,
44 F.3 1345 (7th Cir. 1995) ....................................................................................11

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) ....................................................................................................... 21-23

*Doe 1, et al. v. Chestnut Health Sys., Inc.*,
No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ........ 12, 13-4, 24

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)................................10

*Doe v. Regents of University of California*,
672 F.Supp. 3d 813 (N.D. Cal. 2023)..........................................................................14

*In re DoubleClick, Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (SDNY 2001)........................................................................11, 12

*Eisenhower Med. Ctr. v. Sup. Ct.*,
172 Cal. Rptr. 3d 165 (Cal. Ct. App. 2014).................................................................17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)...................................................................................... 8-9

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-CV-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ..........................................................................................................18

*Gubula v. time Warner Cable, Inc*,
846 F. 3d 909 (7th Cir. 2017).........................................................................................25

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)..........................................................................11

*Hannant v. Culbertson*,
No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ................ 23-24

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)..................................................15

*Johnson v. Microsoft Corp.*,
No. C06-0900-RAJ, 2009 WL 1794400 (W.D. Wash. June 23, 2009) ..................................15

*Klimas v. Comcast Cable Comms*,
465 F.3d 271 (6th Cir. 2006) ......................................................................................15

*Kurowski v. Rush Sys. for Health* (*"Kurowski I"*),
659 F. Supp. 3d 931 (N.D. Ill. 2023) ........................................................................8

*Kurowski v. Rush Sys. for Health* (*"Kurowski II"*),
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........................................................8-9, 14, 17, 22-23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................ 10, 15-16, 18

*Murphy v Thomas Jefferson Univ. Hosps. Inc.*,
No. 22-4674, 2023 WL 7017734 (E.D. Penn. Oct. 10, 2023) ................................................16

*In re Nickelodeon Consumer Priv. Litig.*,
Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014
WL 3012873 (D.N.J. July 2, 2014)........................................................................................20

*Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*,
486 F.3d 989 (7th Cir. 2007) ..................................................................................................23

*Portillo v. Nebula Genomics, Inc.*,
2025 US. Dist. Lexis 141754 (N.D. Ill. July 24, 2025) ..........................................................22

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-000621-N, 2024 WL 4376162 (N.D. Tex. Oct. 1, 2024) ..................................17

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-621-N, 2025 WL 1519726 (N.D. Tex. May 27, 2025).....................................17

*Rodriguez v. FastMed Urgent Care, PC.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)......................................................................................10

*Roe v. Amgen, Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).......................11

*Roper v. Rise Interactive Media & Analystics, LLC*,
No. 23 CV 1836, 2023 WL 7410641 N.D. Ill. Nov. 9, 2023) ................................................24

*Smith v. Facebook, Inc.*,
262 F.Supp.3d 943 (N.D. Ca. 2017), aff'd 745 F. App'x 8 (9th Cir. 2018) ............................19

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. 2025) ..........................................................................................11

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23- CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ................................2

*Tamraz v. Bakotic Pathology Assocs., LLC*,
No. 22-cv-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022)........................17

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ....................................................................................7

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 209)......................................................................................22

*VPR Internationale v. Does 1-1017*,
No. 11-2068, 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ....................................................15

*Wilson v. Rater8, LLC*,
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)..............................17

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)...........................................21, 24

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................... 19-20

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..................................................................................19

**Statutes**

815 ILCS 530/5.........................................................................................................16

18 Pa. Cons. Stat. § 5703 ...........................................................................................20

18 U.S.C. § 2510(8) ...................................................................................................19

18 U.S.C. § 2511(2)(d) ....................................................................................... *passim*

18 U.S.C. § 2511(3)(a)................................................................................................19

42 U.S.C. § 1320d(6) ........................................................................................ 12, 14-15

1242 U.S.C. § 1320d(6)(B)...........................................................................................15

Electronic Communications Privacy Act (ECPA),
18 U.S.C. § 2510, et seq.......................................................................................... *passim*

Health Insurance Portability and Accountability Act (HIPAA) .......................................... *passim*

Illinois Medical Patient Rights Act, 410 ILCS 50/3(d) (MPRA) ...............................................16

**Other Authorities**

45 C.F.R. § 160.103.............................................................................................12, 15

Fed. R. Civ. P. 12(b)(1)...............................................................................................25

Fed. R. Civ. P. 12(b)(6)....................................................................................................25

Defendant Capital Vision Services, LLC, d/b/a MyEyeDr. (hereafter "Defendant" or "MyEyeDr.") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Class Action Complaint ("the Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

MyEyeDr. is a Virginia-based provider of optometry services operating a Website through which individuals may make appointments for an eye examination by an optometrist. Plaintiff alleges that MyEyeDr.'s use of third party website software for analytics and marketing purposes on its Website[1] constitutes an unlawful wiretap under federal wiretapping law and violates the Illinois common law. Plaintiff's Complaint is replete with theoretical, generalized and conclusory allegations and fails to allege any individualized facts sufficient to establish plausible claims. Indeed, the Complaint utterly lacks any factual allegations plausibly demonstrating that Plaintiff's individually identifiable protected medical information, including but not limited to prescription information or an underlying eye or medical condition, was intercepted and/or disclosed to third parties. At most, Plaintiff alleges that a third party—Google—received information that she made an appointment to be seen for an eye health examination and did not presently wear glasses.

Plaintiff fails to plausibly allege that any underlying medical condition was intercepted or revealed. The mere fact that Plaintiff made an eye health appointment is not protected health information. Notwithstanding the Complaint's abundance of repetitive conclusory rhetoric concerning alleged breaches of medical privacy and confidentiality, Plaintiff misses the commonsense point that wearing glasses (even prescription eyewear) or not wearing glasses (as per the allegation here) is not private medical information because an individual's wearing of glasses or lack thereof is in full public view for all to see.

---

[1] www.myeyedr.com and hereinafter, the "Website."

In the absence of any individualized allegations, the Complaint relies on boilerplate generalized allegations to impermissibly extend the reach of federal wiretapping law and state common law to penalize a healthcare provider for employing ubiquitously deployed, commercially available website technologies. These technologies were not even in existence when the federal wiretapping law at issue here was originally enacted, and Plaintiff fails to allege any independent criminal or other malicious or tortious purpose with respect to Defendant's use of these technologies required for her claim. Instead of ascribing any criminal or tortious motive to Defendant, Plaintiff merely alleges that MyEyeDr. used these technologies on the Website by permitting the disclosure of her browsing information to third party Google to provide targeted online advertising and analytics for financial gain. Plaintiff's lawsuit is another example of overreach by plaintiffs' class action attorneys, and is among similar cases, filed in this and other courts, to expansively use traditional wiretapping law to expose healthcare providers to the specter of class action liability for merely conducting normal website operations. One court in Georgia analogized these types of cases to having "sprouted like weeds in recent years." *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23- CV-5416-TWT, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (granting Piedmont Healthcare's motion to dismiss for failure to state a claim). Unsurprisingly, many of these cases have been dismissed.

This Complaint should be dismissed in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6) because **(i)** Defendant cannot intercept communications to which it is a party under the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), 18 U.S.C. § 2510, *et seq.*; **(ii)** there are no facts plausibly demonstrating the applicability of the crime-tort exception to one-party consent under the ECPA as there is lacking (a) any alleged independent actions outside the alleged interception itself; (b) any motive to injure Plaintiff criminally or

tortiously; or (c) any facts plausibly demonstrating the disclosure of Individually Identifiable Health Information ("IIHA") in violation of the Health Insurance Portability and Accountability Act's ("HIPAA") criminal penalties; and **(iii)** Plaintiff's claims wholly lack the necessary specificity as to her individually to plausibly establish interception of any content of communications concerning any health conditions.

Moreover, at its core, Plaintiff's wiretapping claim is fundamentally inconsistent with her own actions. Puzzlingly, Plaintiff sues the local healthcare provider MyEyeDr. (rather than Google), asserting that her privacy was violated when she not only consented to but affirmatively *welcomed* data sharing and aggregation of her online browsing information, and receipt of advertising, when she voluntarily set up her Gmail account and became a Google customer. (*See*, *e.g.*, Complaint ("Compl.") ¶ 11). Plaintiff's assertion that MyEyeDr.'s disclosure of a user's Internet Protocol ("IP") address used to access its Website constituted a disclosure of Protected Health Information ("PHI") in violation of HIPAA is incorrect because IP addresses are generally shared by tens of thousands if not more users and, therefore, do not constitute any form of Individually Identifiable Health Information ("IIHI") under HIPAA.[2] Even assuming, *arguendo*, that Plaintiff alleged that an IP address associated with her use (and identifiable to her) was shared (which she does not), there is no allegation that the Defendant's sharing of such IP address was done for an independent criminal or tortious purpose sufficient to defeat the federal wiretapping law's one-party consent exception. Notably, because there are no factual allegations whatsoever that Defendant disclosed communications concerning Plaintiff's particular health condition, associated treatment records, or prescription information to a third party, this matter should be dismissed in its entirety with prejudice. Plaintiff nevertheless speciously brings an ECPA claim

[2] Plaintiff fails to include any factual allegations concerning any IP address used by her individually.

against MyEyeDr. based on the alleged disclosure of metadata, which purportedly resulted in her subsequently receiving targeted advertising—from a large media company which she has puzzlingly not sued, despite the fact that Google's targeted advertising conduct is the crux of her case and she is their customer.

This Court should also dismiss the remaining state common law claims because the purported causes of action fail to state cognizable claims under Illinois law and Plaintiff has not adequately alleged the substantive elements required for her claims, including the lack of any factually sufficient allegations that Defendant breached any alleged duties in tort, contract or under HIPAA or caused her any injuries or damages. Critically, Plaintiff has no damages because she has not alleged that she received any advertisements related to the disclosure of her individual eye or medical condition. Accordingly, the Complaint should be dismissed with prejudice.

## II. RELEVANT ALLEGED FACTS

According to the Complaint, Defendant "manages the affiliated doctor-owned medical practice" for which patients may "book[] eye exams on the website https://www.myeyedr.com/" (the "Website"). (Compl. ¶¶ 1-2). This litigation was commenced on July 8, 2025, by Plaintiff Che'la McClain ("Plaintiff"), who alleges she booked an appointment on the Website in or around May 2025, and purports to bring a class action lawsuit on behalf of all persons who booked eye exam appointments on the Website. (*Id.* ¶¶ 1, 8). Plaintiff alleges that Defendant "intercepts and discloses" to third party Google LLC ("Google") patients' online communications as they scheduled eye exams at one of its "43 MyEyeDr. locations within Illinois[,]" using certain technologies on the Website that track user web browsing activity. (*Id.* ¶¶ 3, 13). The use of these tracking technologies allegedly disclosed patients' browsing activity on the Website (*i.e.*, "patient status and whether they use prescription glasses or contacts") to third party Google. (*Id.* ¶ 73). Plaintiff alleges that the disclosure of this web browsing activity resulted in the disclosure of

patients' protected health information ("PHI") to Google for targeted advertising purposes. (*Id.* ¶¶ 6, 14). Plaintiff alleges violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*., and common law claims of negligence, breach of confidence, unjust enrichment, and breach of implied contract. (*Id.* ¶¶ 93- 155).

More specifically, Plaintiff claims Defendant aided and conspired with Google to embed Google Analytics pixels and software into the Website to "contemporaneously" and "surreptitiously" intercept the Website communications of patients for targeted advertising and analytics purposes without patients' consent. (Compl. ¶¶ 47, 52, 56-59, 69, 79-80). According to Plaintiff, Google Analytics is incorporated into the Website, by adding a small piece of software to each page on the site, including when users are booking appointments. (*Id.* ¶ 53). Subsequently, "[t]his code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on[,]" while also collecting "PII [Personally Identifiable Information], such as IP addresses and device information related to the specific computing device a consumer (or patient) is using to access a website[,]" including "the patient's operating system, operating system version, browser, language, and screen resolution." (*Id.* ¶ 53). Additionally, Plaintiff alleges that since the Website utilizes Google's tracking pixels and software, it obtains and discloses PII and PHI to Google, including "IP address, device information, and User IDs." (*Id.* ¶ 59). Plaintiff further alleges, that the IP address, device information and User-ID information, taken together with the vast quantities of consumer data collected by Google Analytics can be linked by Google to an individual's specific identity, permitting subsequent targeting for advertising purposes. (*Id.* ¶¶ 67-69).

Plaintiff's individualized assertions are sparse. She alleges that she maintained an active Gmail account and when registering for the Gmail account she provided her full name, date of

birth and gender, and that when Plaintiff accesses her Gmail account Google collects her IP address and information regarding her electronic device and maintains it in a profile that Google uses for targeted advertising purposes. (*Id.* ¶ 11). Plaintiff claims that she used the same device and browsers to access the Website and her Gmail account. (*Id.* ¶ 11). Plaintiff claims that "[a]fter booking an appointment on the Website, Plaintiff began receiving targeted advertisements for similar products or services." (*Id*. ¶ 10). Plaintiff claims that Google learned that she had an appointment scheduled, was a new patient, did not wear glasses, and was looking to try contacts. (*Id*. at 73, Figure 1). Notably, she does not allege that the subsequent advertisements related to any underlying medical or eye related condition.

Plaintiff claims that MyEyeDr. did not comply with its obligations to ensure that patients' legally protected PHI handled on the Website is protected in accordance with its obligations under HIPAA. (Compl. ¶¶ 4, 23-24). In December 2022, HHS issued a short-lived "Online Tracking Bulletin" on use of third-party cookies, pixels and other tracking technology on healthcare websites on which Plaintiff extensively relies. (*Id.* ¶¶ 25-29). The original 2022 Bulletin, and its revised version in March 2024, declared that "[r]egulated entities … are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." (*Id.* ¶ 25). Since its issuance**,** class action law firms have filed many dozens of cases across the United States against healthcare providers, and Plaintiff elected to rely on this Bulletin even though it was judicially vacated in 2024 prior to her alleged 2025 visit to the Website, and specifically this Bulletin is not a law, statute or regulation.[3]

[3] Three (3) versions of the Bulletin are attached to the Declaration of Brian G. Cesaratto, Esq. ("Cesaratto Decl.") (Exs. A-C). Plaintiff, however, apparently cites to only the original version in the text of her Complaint (Ex. A), does not reference the revised version (Ex. B) and did not acknowledge that prior to the filing of her 2025 Complaint the original and revised HHS Bulletin was vacated in *Am. Hosp. Assn., v. Xavier Becerra,* 738 F.Supp.3d 780 (N.D. Tex.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedures 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although this standard does not require the inclusion of detailed factual allegations in a pleading, the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion[.]" (citation omitted)). In deciding a motion to dismiss, the Court may consider facts alleged in the complaint, exhibits to the complaint and documents incorporated in the complaint by reference. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

## IV. ARGUMENT

### A. Plaintiff's ECPA Claim Should Be Dismissed Because Defendant Was A Party To The Communications.

The ECPA does not apply where the alleged interceptor was a party to the communication unless the interception was for a criminal or tortious purpose. 18 U.S.C. § 2511(2)(d). Specifically, the ECPA provides:

> It shall not be unlawful ... for a person not acting under color of law to intercept a wire, oral, or electronic communication ***where such person is a party to the communication*** or where one of the parties to the communication has given prior consent to such interception ***unless such communication is intercepted for the***

2024) (Ex. C). The link in footnote 4 of the Complaint does presently access the March 2024 Bulletin noting the impact of the *Becerra* decision (Ex. C).

> ***purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

*Id.* (emphasis added). Under ECPA's one-party consent framework, there is no illegal interception, as a matter of law, where one-party to the communication consents to the capture of such information. *Kurowski v. Rush Sys. for Health d/b/a Rush Univ. Sys. for Health (Kurowski II)*, 683 F. Supp. 3d 836, 842 (N.D. Ill. 2023)(quoting 18 U.S.C. § 2511(2)(d)). The operative fact in assessing whether the exception applies is "who the intended recipient of the communication was." *Kurowski v. Rush Sys. for Health* (*"Kurowski I"*), 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023); *see also Kurowski II*, 683 F. Supp. 3d at 842 ("The parties do not appear to dispute that [the defendant hospital system] may invoke the party exception to the Wiretap Act, as it was the intended recipient of the allegedly intercepted communications here."). Here, Plaintiff expressly alleges Defendant violated the ECPA through Defendant's interception of Plaintiff's communications intended for Defendant on its Website. (*See, e.g.*, Compl. ¶¶ 2-3, 8-9, 72-73). Thus, the one-party consent rule applies because the only plausible reading of Plaintiff's allegations is that Plaintiff's communications were intended for Defendant via the Website and Defendant "immediately" and "contemporaneously" disclosed those communications to third parties. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (when the defendant is the intended recipient of the communication, it is necessarily "one of its parties"); *Kurowski I*, 659 F. Supp. at 938 (defendant was the intended recipient and a party to the communication in a case that alleged defendant unlawfully disclosed PHI to third parties by using tracking technologies on its web pages).

## B. Plaintiff Has Not Plausibly Alleged The Applicability of The ECPA's Crime-Tort Exception.

In order for Plaintiff to trigger the crime-tort exception to the one party consent exception (*i.e.*, the exception within the exception), the criminal or tortious acts must be "secondary to the

acquisition of the communication." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015), *cert denied*, 580 U.S. 814 (2016); *Caro v. Weintraub*, 618 F. 3d 94, 100 (2d Cir. 2010); *In re Google Inc.*, 806 F.3d at 145 ("[A]ll authority of which we are aware indicates that the criminal or tortious acts contemplated by §2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *Kurowski*, 683 F. Supp. 3d at 844 ("Moreover, it is well established that [the crime or tort exception] only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself."). "To survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010); *see also Kurowski II,* 683 F. Supp. 3d at 842. A criminal or tortious motive to invoke the exception cannot be inferred by the act of interception itself. *Caro*, 618 F.3d at 200 ("[i]ntent may not be inferred simply by demonstrating that the intentional act [of interception] itself constituted a tort. A simultaneous tort arising from the act of [interception] is itself insufficient").

That the Plaintiff here insufficiently complains about the interception itself, and not an independent act, is made clear by the fact that the Plaintiff alleges the Defendant's criminal or tortious conduct occurred "***contemporaneously***" and "***immediately***" with the interception. *See Compl*. ¶ 53, 75 (emphasis added); *see also Compl*. ¶3 (Plaintiff alleges that "[t]his is achieved through Defendant's secret installation of complex computer code, which serves to track and disclose Defendant's patients' activity, ***in real time***, to Google" (emphasis added)). *See Doe1, et al. v. Chestnut Health Sys.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) (dismissing ECPA claims where Plaintiffs allege the Defendant's criminal or tortious

conduct occurred "simultaneously" and "contemporaneously" with the interception); *Kurowski II*, 683 F. Supp. 3d at 844 (dismissing ECPA claims where the other criminal purposes Plaintiff alleged are either duplicative of the allegedly unlawful wiretapping itself or relate to claims that the Court has determined have failed).

Courts have dismissed ECPA claims at the motion to dismiss stage, where, as here, alleged violations of HIPAA or state health privacy laws form the basis of the crime-tort exception and plaintiffs fail to allege the required independent criminal or tortious motivation. Specifically, where courts have found that the alleged purpose of the interception was for commercial gain (as are the allegations here), but not to commit a crime or tort, the crime-tort exception is not applicable.[4] These courts found that an alleged commercial or marketing related motive is not criminal or tortious such that the crime-tort exception can be invoked. *See e.g.*, *Doe 1, et al.,* 2025 WL 1616635, at *12 (dismissing ECPA claims with prejudice where Plaintiff complained that the Defendant shared the information with a third party for the purpose of creating targeted advertisements and enhanced marketing services, not for tortious or criminal conduct); *Rodriguez v. FastMed Urgent Care, PC.*, 741 F. Supp. 3d 352, 363-364 (E.D.N.C. 2024) (dismissing the ECPA claim holding that allegations of interception through tracking technologies for a commercial purpose, not for purposes to commit a crime or tort, do not establish the crime-tort exception); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) ("The collection of information itself was not for the purpose of committing a crime or tort (at least, as pled); rather, the apparent purpose was to use the information collected for market research

[4] Plaintiff alleges only that the Defendant acted for financial and commercial reasons. *See, e.g.*, Compl. ¶ 3 (***<u>In pursuit of profit</u>*** and without regard for its patients' medical privacy, Defendant intercepts and discloses its patients' confidential communications as they seek medical care through the Website.); ¶ 76 ("Defendant engages in this deceptive conduct ***<u>for their own profit</u>*** at the expense of their patients' privacy"); ¶ 112 ("Defendant used the wire or electronic communications ***<u>to increase its profit margins</u>***. Defendant specifically used Google Analytics to track and utilize Plaintiff's and Class members' PII and PHI ***<u>for financial gain</u>***").

and consumer analysis solely for the benefit of Kaiser in better reaching and serving its patients."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *Roe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiff's tortiously or criminally"); *In re Grp. Health Plan Litig*., 709 F. Supp. 3d 707, 719 (D. Minn. 2023) (this district has not found that the crime-tort exception to the Wiretap Act is applicable where the defendant's primary motivation was to make money); *In re DoubleClick, Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) ("In light of the abundant evidence that DoubleClick's motivations have been licit and commercial and the utter lack of evidence that its intent has been tortious, we find as a matter of law that plaintiffs have failed to allege that DoubleClick has acted with a 'tortious' purpose."). Although there is a split of authority within the Illinois federal district courts, Defendant respectfully maintains that the weight of the afore-mentioned authority, including the Central District's recent decision in *Doe 1, et al. v. Chestnut* is the correct view.[5]

The Seventh Circuit has explained the crime-tort exception in dismissing an ECPA claim that further determines its inapplicability to the instant case: "The defendants did not order the camera-armed testers into the Desnick Eye Center's premises in order to commit a crime or tort. Maybe the program as it was eventually broadcast was tortious … But there is no suggestion that

[5] *Cf. Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. 2025) (holding that the ECPA does not require a "criminal or tortious purpose" and that allegations of financial gain in the disclosure of PHI are a criminal or tortious act); *Allen v. Midwest Express Care, Inc*., 2025 WL 2240253 (N.D. Ill. 2025).

the defendants sent the testers into the Wisconsin and Illinois offices for the purposes of defaming plaintiffs." *Desnick v. American Broadcasting Companies*, 44 F.3 1345, 1353 (7th Cir. 1995).

Of course, not all disclosures of PHI are done with a criminal purpose. *See DoubleClick*, *Id*. at 519 ("However, [a] culpable mind does not accompany every tortious act"). Rather there must be a tortious or criminal motive alleged independent of interception itself, and, since no such independent tortious or criminal motive is alleged here, then the ECPA claims are fatally defective and properly dismissed.

### C. <u>Plaintiff Does Not Plead Any Facts Demonstrating That Defendant Disclosed Individually Identifiable Health Information (IIHI) to Google.</u>

Indeed, as a threshold matter, Plaintiff failed to plead facts to establish a HIPAA violation involving the disclosure of her Individually Identifiable Health Information (IIHI) sufficient to fall within the crime/tort exception to 18 U.S.C. § 2511(2)(d). This is true even if Plaintiff had plausibly pled both a secondary act and an independent criminal or tortious motivation (which, as shown above, she has not). Critically, the HIPAA Privacy Rule protects only PHI that is IIHI and does not extend to all health-related information. *See* 42 U.S.C. § 1320d(4)*;* 45 C.F.R. § 160.103 *et seq*., § 164.102 *et seq*., § 164.500 *et seq*. Correspondingly, HIPAA criminal penalties apply only to knowing and unlawful disclosure of IIHI (*see* 42 U.S.C. § 1320d(6)), and, therefore, Plaintiff cannot avail herself of the exception to one party consent, unless there has been in the first instance a disclosure of IIHI. PHI is limited to only "Individually Identifiable Health Information (IIHI)" which in turn is defined as health information that:

> (1) is created or received by a health care provider [or other covered entity]; and (2) ***<u>relates to the past, present, or future physical or mental health or condition</u>*** ***<u>of an individual</u>***; the provision of health care ***<u>to an individual</u>***; or the past, present, or future payment for the provision of health care ***<u>to an individual</u>***; and (i) that ***<u>identifies the individual</u>***; or (ii) with respect to which there is a reasonable basis to believe the information can be used ***<u>to identify the individual</u>***.

45 C.F.R. § 160.103 (emphasis added); *accord* 42 U.S.C. § 1320d(6). IIHI is limited, therefore, to

health information that is ***both*** related to a ***specific person's health or condition*** and either actually identifies, or is reasonably capable of being used to identify, ***that individual***. If either the health information does not relate to any particular individual or to the individual's health condition, it is not PHI and a covered entity may freely disclose it. Plaintiff has failed to plausibly plead any facts demonstrating the disclosure of PHI, and her conclusory statements of a PHI disclosure are unsupported and do not suffice to satisfy *Twombly*.[6]

Plaintiff's reliance on the original 2022 version of the HHS Bulletin (cited in the text of the Complaint) to attempt to establish unauthorized disclosure of PHI and a corresponding HIPAA violation to avoid the ECPA's one-party consent exception is wholly misplaced. At the outset, HHS realized that its original guidance was incorrect, and revised it in March 2024, directly undercutting the numerous allegations in Plaintiff's claims concerning IP address and visits to the Website. The revised Bulletin (Cesaratto Decl. Ex. B) provides that: "*the mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information)* with a visit to a webpage addressing specific health conditions or listing health care providers is not a sufficient combination of information to constitute IIHI if the visit to the webpage is not related to an individual's past, present, or future health, health care, or payment of health care." (emphasis added).[7]

The guidance in the HHS Bulletin was later vacated by a federal court in 2024 well before Plaintiff filed her complaint (which quizzically Plaintiff fails to mention in her Complaint) and well before she accessed the Website in 2025. *See Am. Hosp. Assn. v. Xavier Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024). On June 20, 2024, in *Becerra*, the U.S. District Court for the

[6] The Complaint is rife, however, with conclusory and unsupported allegations that "PII and PHI" was disclosed. (Compl. ¶¶ 59, 78, 98-99, 106, 112, 199-25, 127-34, 139, 142, 145-46, 152-54).
[7] Plaintiff repeatedly alleges that IP address both identified visitors and was PHI. (Compl. ¶¶ 11, 53, 59, 68, 74, 76).

Northern District of Texas vacated the HHS Bulletin extensively relied upon by Plaintiff to support her claims. *Id*. The court has vacated the HHS Bulletin that HIPAA obligations are triggered where "an online technology connects (1) an individual's IP address with (2) a visit to a UPW [unauthenticated public website] addressing specific health conditions or healthcare providers" (the "Proscribed Combination"), on the grounds, among others, that this guidance is inconsistent with HIPAA's definition of IIHI and PHI. *Id.* at 789. The court held, "the Proscribed Combination facially violates HIPAA's unambiguous definition of IIHI." *Id* at 800. The court vacated even HHS's Revised Bulletin which "softened language from the Original," and "suggests the IIHI test is subjective." *Id* at 789. Thus, Plaintiff's purported authority for the assertion that the disclosure of IP address and other metadata is IIHI is no longer supported.

The HHS interpretation of the applicability of HIPAA to online technologies is, in any event, not an adequate basis to support the crime tort exception here, and this Court should reject applying HHS's judicially-vacated interpretation of HIPAA in the ECPA and wiretapping context. In considering the impact of the HHS Bulletin in a similar case involving the same technologies and types of alleged disclosures (i.e., IP addresses, device IDs, and unique identifying codes) on both user authenticated and unauthenticated pages, this Court held:

> ***<u>The interpretation of IIHI offered by HHS in its guidance goes well beyond the meaning of what the statute can bear</u>***. As just described, IIHI under section 1320d(6) must, in addition to other requirements, 'relate[] to the past, present, or future ***<u>physical or mental health or condition of an individual, the provision of health care to an individual</u>***, or the past, present, or future payment ***<u>for the provision of health care to an individual</u>***.' 42 U.S.C § 1320d(6) (emphasis added). The type of metadata that [plaintiff] alleges was transmitted via third-party source code does not in the least bit fit into that category. And while the actual substance of [plaintiff's] private communications related to her care – like the above noted MyChart/blood pressure example from [*Doe v. Regents of University of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023)] would likely fall under section 1320d(6)'s definition of IIHI, [plaintiff] has failed to allege that anything of that nature was actually disclosed.

*Kurowski II*, 683 F. Supp. 3d at 844 (emphasis added) (holding that because the HHS interpretation of HIPAA is not supported, defendant falls within the one party exception to the Wiretap Act, and dismissing the wiretap claims); *see also Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (holding that disclosure of "IP addresses" and "URLs" in connection with the use of the Meta Pixel is insufficient to "plausibly" allege a HIPAA violation).

Indeed, an IP address is not "information" that either identifies or provides a reasonable basis to identify "the individual" whose own health, healthcare, or payment for health care actually "relates to" a website visit. 42 U.S.C. § 1320d(6)(B); *accord* 45 C.F.R. § 160.103. No facts are pled here demonstrating that Plaintiff's IP address identifies or has a reasonable basis to identify Plaintiff (in particular) (and as an individual) whether in connection with her own health or condition or otherwise. Given the utter absence of any assertion that Plaintiff used her own fixed IP address to visit the Website, the IP address is not her individual IP address, but instead nothing more than one of the dynamically assigned numerous (potentially many thousands) IP addresses available to all the Internet Service Provider subscribers and is not individually identifiable. Numerous federal courts have held that an IP address does not in and of itself identify an individual. *See Klimas v. Comcast Cable Comms*., Inc., 465 F.3d 271, 276 n.2 (6th Cir. 2006) (noting that "IP addresses do not in and of themselves reveal" personally identifiable information, such as "a subscriber's name, address [or] social security number," without more); *VPR Internationale v. Does 1-1017*, No. 11-2068, 2011 WL 8179128, at *1 (C.D. Ill. Apr. 29, 2011) (denying motion to certify class action because IP addresses did not identify potential plaintiffs); *Johnson v. Microsoft Corp*., No. C06-0900-RAJ, 2009 WL 1794400, at *4 (W.D. Wash. June 23, 2009) ("In order for 'personally identifiable information' to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of particular

Internet service provider's subscribers. Thus, . . . an IP address is not personally identifiable[.]"); *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419 at *3 n.10 (C.D. Cal. May 29, 2007) ("As an IP address identifies a computer, rather than a specific user of a computer, it is not clear that IP addresses . . . are encompassed by the term 'personal information' in defendants' website's privacy policy."). Indeed, an IP address is nothing more than a number that identifies the address of a device connected to the Internet at the time of connection. An IP address is not PHI for that reason alone.

In *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023), the court dismissed common law and statutory claims under Rule 12(b)(6) based on similarly vague and insufficient allegations that a healthcare organization used the Meta Pixel on its public website. The Court found, in reasoning equally applicable here, that the plaintiffs failed "to state *what* information [they each] provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta" and the court concluded that the class action complaint should be dismissed because the routine browsing activity at issue was not protected sensitive information and that the complaint merely posited hypothetical damages. *Id.* at 1123*; see also Murphy v Thomas Jefferson Univ. Hosps. Inc.*, No. 22-4674, 2023 WL 7017734, at *3 (E.D. Penn. Oct. 10, 2023) (dismissing common law and statutory claims based on use of Meta Pixel and holding that the phrase "highly confidential information" and allegations in the complaint that communications involved a "wide range of personal privacy healthcare information" and "personally identifiable patient health information" relating to "medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctor's visit notes, medications and treatments, and health insurance" were too vague and conclusory to satisfy the *Twombly* standard). Plaintiff's Complaint here should be dismissed for the same exact reasons.

Lastly, notwithstanding Plaintiff's citation to the Illinois Medical Patient Rights Act ("MPRA"), 410 ILCS 50/3(d), and Personal Information Protection Act ("PIPA"), 815 ILCS 530/5 (Compl. ¶ 34), the result is the same (as under HIPAA) because IP address is not identifiable information and there are no allegations here demonstrating that Plaintiff's health condition or care related treatment or diagnosis was disclosed to Google. Moreover, Plaintiff does not allege that Plaintiff's first name or first initial and last name was disclosed to Google, and, therefore, as a matter of law, PIPA has no applicability here. Plaintiff does not plausibly allege any facts demonstrating a privacy violation under the MPRA, and, in any event, unlike HIPAA there is no criminal penalty for such a disclosure under the statute.

### D. Disclosure To a Third Party Of A Patient Merely Making An Optometry Appointment Is Not PHI.

Plaintiff incorrectly asserts that the mere fact an appointment was scheduled qualifies as PII and PHI. (Compl. ¶ 59). The fact that an appointment was scheduled is plainly not "health or treatment information[.]" *Kurowski II*, 683 F. Supp. 3d at 843; *see also Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) ("Information that merely indicates appointment information is not 'medical information' under the CMIA."); *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (distinguishing between "information about [an] appointment" and "information regarding treatment"). In other words, "the information must be 'substantive,' rather than merely administrative." Tamraz, 2022 WL 16985001, at *4 (quoting *Eisenhower Med. Ctr. v. Sup. Ct.*, 172 Cal. Rptr.3d 165, 168 (Cal. Ct. App. 2014); *Rand v. Eyemart Express, LLC*, No. 3:24-CV-621-N, 2025 WL 1519726 (N.D. Tex. May 27, 2025).[8]

[8] *See also Rand v. Eyemart Express, LLC*, 2025 WL 1519726, at *3 (dismissing plaintiffs' amended complaint, when additionally alleged facts about information disclosed by Google Pixel to a third party, including "the location of the Eyemart store most convenient for [a plaintiff] to visit and ultimately make her purchases does not constitute any

Plaintiff does not allege any facts, however, demonstrating that prescription information was disclosed. *See Rand*, 2025 WL 1519726, at *4 ("Because nothing in Figure 13 depicts disclosure to Meta of prescription information or that the lenses are prescription lenses, the Court finds that this does not sufficiently allege that any PHI was shared with Meta.). Similar to Rand, Plaintiff's figure 1 does not support her assertion that prescription information or medical condition was intercepted and disclosed. *See* Figure 1, (Compl. ¶ 73 (showing only "glasses_no_try_contacts):

| | |
|---|---|
| en | appointment_scheduled |
| _c | 1 |
| ep.appointment_id | 65858550 |
| ep.med_id | 34917271 |
| ep.doctor_id | 11715 |
| ep.location_id | 303 |
| ep.patient_type | new-patient |
| ep.selected_type | glasses_no_try_contacts |
| ep.slot_type | Traditional |

The allegation here that there was a disclosure to Google of Plaintiff's browsing activity reflecting that she did not wear glasses (something that is obvious from looking at her) and wanted to try contacts lenses is an utterly insufficient and wholly specious basis to assert a criminal violation of HIPAA against Defendant.[9]

---

shared PHI"); *Rand*, 2024 WL 4376162, at *1, 4 (N.D. Tex. Oct. 1, 2024) (dismissing plaintiffs' complaint alleging violations of ECPA, state wiretapping statutes, and common law actions, where plaintiffs alleged Google Pixel relayed information on searches for prescription eyewear and eye doctors to third party Facebook, because "the fact that Pixel shared with Meta that Plaintiffs looked at glasses on a site that offers both prescription lenses and nonprescription lenses on their products does not share any of their IIHI" and because following links to doctors' websites does not establish patient status); *Gray v. Luxottica of Am., Inc*., No. 8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at *8 (C.D. Cal. Dec. 16, 2024) (concluding, where the plaintiff alleged that Google's Meta Pixel tool disclosed the rescheduling of his eye exam to Facebook, that "medical information cannot mean just any patient-related information held by a health care provider," and that "[i]nformation that merely indicates appointment information is not 'medical information'" (citations omitted) (emphasis added)).

[9] *See Condon v. Reno*, 972 F. Supp. 977, 991 (D.S.C. 1997), *aff'd*, 155 F.3d 453 (4th Cir. 1998), *rev'd on other grounds*, 528 U.S. 141, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000) (examining the constitutionality of the Driver's Privacy Protection Act and concluding that "there clearly is some medical or disability information for which there is no privacy interest. For example, the fact that an individual wears eyeglasses (a likely item of information in motor vehicle records) is not an intimate personal matter since it is obvious to anyone who sees that individual" (emphasis added)).

### E. **Plaintiff's ECPA Claims Should Be Dismissed Because Plaintiff Consented to the Alleged Interception and Disclosure to Google By Establishing A Gmail Account.**

Where, as here, a plaintiff consented to the interception, there can be no ECPA liability. *See* 18 U.S.C. § 2511(2)(d). "Prior consent, including implied consent, can be demonstrated when the person being recorded knew or should have known[] that the conversation was being recorded." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (quotation marks and citation omitted). Plaintiff admits that she agreed to Google's aggregation of her online activity and information, including to receive targeted advertising. (Compl. ¶11). Plaintiff freely consented to the collection, disclosure and use of her browsing data and activity when she visited the Website defeating her wiretapping claims. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Ca. 2017), aff'd 745 F.App'x 8 (9th Cir. 2018) (social media users' consent when they signed up for their social media accounts bars their statutory claims under the ECPA). Because Plaintiff also consented, the one party consent exceptions invoked by Plaintiff under the ECPA as to Defendant's consent are deficient as a matter of law.

### F. **Plaintiff Fails to Plausibly Allege That "Contents" of Communications Concerning Her Particular Health Condition Were Intercepted or Disclosed.**

Plaintiff must demonstrate that Defendant intercepted or disclosed the "contents" of a communication in order to state a claim under ECPA. 18 U.S.C. § 2511(3)(a) (defining "Contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8)). Courts interpreting the meaning of content under ECPA have distinguished between "record information" ("a record or other information pertaining to a ... customer") and "contents" ("the intended message conveyed by the communication"), finding that "record information" is not within the meaning of content under the statute. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) ("'contents' ... does not include record information regarding

the characteristics of the message that is generated in the course of the communication"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding under the California Invasion of Privacy Act, applying the same definition of content under ECPA, that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" did not constitute "contents"); *see also In re Nickelodeon Consumer Priv. Litig.*, Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (holding the "addressing information" including IP addresses "are simply not 'contents' of a communication"); 18 Pa. Cons. Stat. § 5703.

Here, Plaintiff alleges that user IP addresses and electronic device information on the Website permitted tracking the Website pages the user viewed and what information the user clicked and disclosed to Google. *See* Compl. ¶¶ 53, 54, 57, 76. None of this information constitutes "contents" under the ECPA. *See In re Nickelodeon,* 2014 WL 3012873, at *15 (finding addressing information, including "IP addresses ... are simply not 'contents' of a communication"); *see also e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding under the California Invasion of Privacy Act, applying the same definition of "content" under ECPA, that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" did not constitute content).

Indeed, Plaintiff's single conclusory allegation is that she received "unwanted advertisements that reveal" she sought "treatment for specific medical conditions." (Compl. ¶ 132). But this alleged after the fact receipt of unspecified advertising does not suffice to show that any

"contents" of communications were disclosed. In sum, Plaintiff does not plausibly allege that any information concerning any particular medical condition (which is never described) was disclosed, or that she received targeted advertisements concerning her particular medical conditions based on her interactions on Defendant's Website. Thus, Plaintiff has failed to plausibly allege that the contents of intercepted communications related to her medical conditions were intercepted or disclosed in violation of the wiretapping laws.

### G. <u>Plaintiff Does Not Plausibly Allege Any Common Law Claims.</u>

#### 1. Plaintiff's Negligence Claim Fails.

To sufficiently plead a claim of negligence "[u]nder Illinois law," the plaintiff must "plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2023 WL 7410641, at *5 (N.D. Ill. Nov. 9, 2023). "Whether a duty exists is a question of law that may be resolved on a motion to dismiss." *Wittmeyer v. Heartland All. for Hum. Needs & Rts*., No. 23 CV 1108, 2024 WL 182211, at *2 (N.D. Ill. Jan. 17, 2024). Plaintiff's claim fails because Plaintiff does not adequately allege that the Defendant owes a legally cognizable common law duty to safeguard information of Plaintiff as a visitor to the Website. *See Doe 1, et al.,* 2025 WL 1616635, at *3 ("The Illinois Supreme Court has not recognized a duty to safeguard personal information, and the appellate courts have reached conflicting conclusions."). Because Plaintiff's common law claim of negligence arises out of a duty not recognized in Illinois, the Plaintiff's claim must be dismissed. *Id*. at *3.

Plaintiff further asserts that the duty of care arose because "[a]s a provider of health care under the law, Defendant had a special relationship with Plaintiff and Class members who entrusted Defendant to adequately protect their PII and PHI." Compl. ¶ 120. Plaintiff's claims should be dismissed because Illinois courts do not recognize a cause of action for breach of duty

of confidentiality of patient information, either express or implied. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) (holding that Illinois courts do not recognize a cause of action for breach of confidentiality, and declining to create one); *see also Kurowski II*, 683 F. Supp. 3d at 845 (concluding that "a common law cause of action for breach of confidentiality remains unavailable in Illinois").

**2. Plaintiff's Breach of Confidence Claim Should Be Dismissed.**

Plaintiff's claim for breach of confidence ("Compl. at Count III - ¶¶ 135-142) should be dismissed because, as noted above, Illinois courts do not recognize a cause of action for breach of duty of confidentiality of patient information, either express or implied. *Dinerstein*, 484 F. Supp. 3d at 594; *see also Kurowski II*, 683 F. Supp. 3d at 845.

**3. Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff's claim for unjust enrichment (Compl. at Count IV - ¶¶143-149) must be dismissed because, as the Seventh Circuit has stated on numerous occasions, "there is no stand-alone claim for unjust enrichment under Illinois law." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 209); *Portillo v. Nebula Genomics, Inc.*, 2025 US. Dist. Lexis 141754 (N.D. Ill. July 24, 2025); *Dinerstein*, 484 F. Supp. 3d at 595. When an "unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* (citation omitted). Plaintiff's unjust enrichment claim fails here because Plaintiff did not plead an independent alternative claim of unjust enrichment, but instead incorporated by reference all other claims and allegations (except for Breach of Implied Contract), thereby inextricably tying the unjust enrichment to those other claims. *See Compl.* ¶¶ 143 ("Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein"). *Kurowski II*, 683 F.

Supp. 3d at 852 (dismissing unjust enrichment claim because Plaintiff incorporated by reference contract claim).

**4. Plaintiff's Breach of Implied Contract Claim Fails.**

Plaintiff's breach of implied contract claim should be dismissed because it fails to plausibly allege the existence of an implied contract, breach of that implied contract and damages. To plead a breach of implied contract claim, "the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *Dinerstein*, 484 F. Supp. 3d at 592-93. "The only difference between an express contract and an implied contract is that an implied contract is inferred from the facts and conduct of the parties, rather than from an oral or written agreement." *BMO Harris Bank, N.A. v. Porter*, 106 N.E. 3d 411, 421 (Ill. App. Ct. 2018). To allege breach of contract in Illinois, the plaintiff must allege "offer, acceptance, and consideration." *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007). Further, a plaintiff must show "that a contract existed, it performed all conditions required under the contract, the other party breached the contract, and the party asserting the claim suffered damages as a result of the breach." *Kurowski II*, 683 F. Supp. 3d at 851. Plaintiff claims that these elements were satisfied when she provided PHI and PII to Defendant as a condition for using its platform and compensation for eye care, thereby entering "into implied contracts pursuant to which Defendant agreed to safeguard and not disclose [] PII and PHI without consent." Compl. ¶¶ 152-53.

Plaintiff has failed to allege a breach because, as shown above, no identifiable health information was disclosed. There was no "commensurate expectation" that wearing/not wearing glasses and appointment information would not be exposed, because whether an individual wears/does not wear glasses and appointment information is neither personal information nor PHI. Even though Plaintiff visited the Website, she failed to rely on any statements in Defendant's

Privacy Policy in support of her implied contract claim. Cf. *Hannant v. Culbertson* ,No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *1 (C.D. Ill. Aug. 20, 2025). Thus, Plaintiff fails to plausibly plead breach of the implied contract that she asserts existed.

**5. To The Extent the Court Finds Any Of Plaintiff's Common Law Claims Viable, They Do Not Plausibly Allege Damage Resulting From the Interception or Disclosure.**

Each of Plaintiff's claims, to the extent viable, should be dismissed because Plaintiff has not suffered any cognizable damages as a common law element because she has failed to plausibly allege that Plaintiff's particular health conditions were ever disclosed to third parties or that she received targeted advertising related to her individual health conditions. Rather, Plaintiff's conclusory allegation is only that ***after*** visiting the Website she received "unwanted advertisements that reveal" she sought "treatment for specific medical conditions and was made to experience "fear, anxiety and worry" as well as a "diminution in the value of [her] personal data" and loss of "property rights." (Compl. ¶¶ 10, 132, 142, 154). Plaintiff fails to allege how those advertisements related to any medical condition, any care or treatment, or caused her any damage. Plaintiff's sparse and wholly conclusory allegations are insufficient because they have alleged nothing more than the loss of browsing information to third parties without alleging any pecuniary or other actual injury. Plaintiff fails to plead the value of the "personal data," either before or after the alleged diminution, or how the value diminished. Plaintiff's asserted emotional damages (such as fear and anxiety) are not cognizable contract damages. *Dinnerstein*, 484 F. Supp. 3rd at 590. Plaintiff's diminished data value theories have been rejected as to implied contract claims. *Hannant*, 2025 WL 2413894, at *14, *Wittmeyer*, 2024 WL 182211, at *5. Plaintiff does not, moreover, allege facts to support impending or future harm. Plaintiff's conclusory assertions of damage have been rejected, even in the context of standing. *Beck v. McDonald*, 848 F.3d 262, 274-75 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *cert denied*, 582 U.S. 932 (2017) ("mere

theft of [personal information], without more, cannot confer Article III standing"); *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384 at *10 (D.S.C. Aug. 16, 2024) (plaintiff failed to include allegations concerning what happened with her private information after it was disclosed to Facebook. For example, nothing in the Complaint specifically alleged that Facebook sold her particular private information and nothing in the Complaint alleged that any person at Facebook (as opposed to a computer) accessed or viewed her private information); *Gubula v. time Warner Cable, Inc.*, 846 F. 3d 909, 912-13 (7th Cir. 2017) (characterizing the plaintiff's theory in claiming lost value of personal information as "gibberish").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion under Fed. R. Civ. P. 12(b)(6) and dismiss the Complaint in its entirety with prejudice.

Dated: September 30, 2025

Respectfully submitted,

EPSTEIN, BECKER & GREEN, P.C.

By: */s/ Carolyn O. Boucek*
Carolyn O. Boucek (IL No. 6346817)
Epstein Becker & Green, P.C.
227 W. Monroe Street
Suite 4500
Chicago, IL 60606
(T): 312-499-1486
(F): 312-845-1998

By: */s/ Brian G. Cesaratto*
Brian G. Cesaratto (admission *pro hac vice* pending)
Shira M. Blank (admission *pro hac vice* pending)
Eleanor T. Chung (admission *pro hac vice* pending)
Epstein Becker & Green, P.C.
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4500
Fax: (212) 878-8600

cboucek@ebglaw.com
bcesaratto@ebglaw.com
sblank@ebglaw.com
echung@ebglaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2025, I electronically filed the foregoing with the Clerk of the above Court using the CM/ECF system, which will send notification of such filing on all counsel of record.

*/s/ Carolyn O. Boucek*
Carolyn O. Boucek